IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| REABE DESIGN LLC, REABE AIRCRAFT PRODUCTS, LLC and TROY REABE<br>   Plaintiffs,<br><br>v.<br><br>REABE AIRCRAFT IMPROVEMENT INC., and JEFF REABE<br>   Defendants. | Case No.<br><br>JURY DEMANDED |

## COMPLAINT

Reabe Design LLC ("RD"), Reabe Aircraft Products, LLC ("RAP") and Troy Reabe (RD, RAP and Troy Reabe, each individually a "Plaintiff", and collectively the "Plaintiffs") hereby bring the present action against Reabe Aircraft Improvement Inc. ("RAI") and Jeff Reabe (RAI and Jeff Reabe, each individually a "Defendant", and together the "Defendants") (Plaintiffs and Defendants, collectively, the "Parties") and allege as follows:

### I. THE PARTIES

1. Plaintiff RD is a Wyoming limited liability company now having a principal address at 2552 Coreland Court, De Pere, WI. 54115.

2. Plaintiff RD is a design and manufacturing firm that develops products for the agricultural aviation industry.

3. Plaintiff RD was originally organized and formed in Wisconsin on September 5, 2010. In September 2012, Plaintiff RD changed its state of organization from Wisconsin to Wyoming and its principal place of business moved from Wisconsin to Minnesota. In 2021, Plaintiff RD's principal place of business moved back to De Pere, Wisconsin and it continued to be organized

1

and registered as a Wyoming limited liability company. Plaintiff RD has been registered as a foreign limited liability company in Wisconsin since July 28, 2021.

4. Plaintiff RD is owned 100% by another Wyoming limited liability company, Reabe Air, LLC ("Reabe Air"). Reabe Air is 100% owned by Plaintiff Troy Reabe.

5. Plaintiff RAP is also a Wyoming limited liability company now having a principal place of business at 2552 Coreland Court, De Pere, WI 54115.

6. Plaintiff RAP distributes and sells as a PMA manufacturer parts that are covered by the intellectual property owned by Plaintiffs Troy Reabe and RD.

7. Plaintiff RAP was originally organized and formed in Wyoming on February 3, 2023. Plaintiff RAP has been registered as a foreign limited liability company in Wisconsin since October 19, 2023 and maintains its principal place of business in De Pere, WI.

8. Plaintiff RAP is owned 100% by Reabe Air, which is 100% owned by Plaintiff Troy Reabe.

9. Plaintiff Troy Reabe is an individual residing in Wisconsin at 2552 Coreland Ct, De Pere, WI. 54115, and he is the managing member of Plaintiffs RD and RAP.

10. Upon information and belief, Defendant Reabe Aircraft Improvement Inc. is a Wisconsin corporation having a principal address at 2160 Greenleaf Road, De Pere, WI. 54115.

11. Upon information and belief, Defendant Jeff Reabe is an individual residing in Wisconsin at 2160 Greenleaf Road, De Pere, WI. 54115, and is the sole member of RAI.

12. Upon information and belief, Defendant Jeff Reabe is also the registered agent for Defendant RAI at the address of 2160 Greenleaf Road, De Pere, WI. 54115.

## II. JURISDICTION AND VENUE

13. This is an action arising under the copyright and patent laws of the United States as set forth in 35 U.S.C. §§ 271(b) and (c), and 17 U.S.C. §§ 106 and 501-505, respectively. Plaintiffs are also bringing claims for false advertising under the Lanham Act as set forth in 15 U.S.C. § 1125(a). This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338(a)-(b).

14. Upon information and belief, this Court has personal jurisdiction over each of the Defendants because they each reside in De Pere, WI, which is within the Eastern District of Wisconsin, Green Bay Division, and they each have substantial, systematic and continuous contacts with and regularly conduct business within Wisconsin and this District.

15. Venue is proper in this Court pursuant to 28 U.S.C. §1400(a) and (b) because, upon information and belief, Defendants each reside in De Pere, WI, which is within the Eastern District of Wisconsin, Green Bay Division.

16. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(3) because Defendants are residents of Wisconsin and subject to personal jurisdiction before this Court. Venue is also appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of infringement occurred in this district.

## III. PLAINTIFFS' COPYRIGHTS

17. Plaintiff RD is the owner of U.S. Copyright Registration No. TX0009439883, issued on October 15, 2024, entitled "Hopper Gauge RD Documents."

18. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009497375, issued on October 14, 2024, entitled "Hopper & Boom Gauge Hopper Quantity and Boom Pressure Gauge Users Manual."

3

19. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009439892, issued on October 15, 2024, entitled "Hopper Gauge Drawings."

20. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009466532, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 1."

21. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009470711, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 2."

22. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009508777, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 3."

23. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009514630, issued on January 15, 2025, entitled "Gauge Drawings – Version 4."

24. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009490997, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 8."

25. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009491001, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 9."

26. Plaintiff Troy Reabe is the owner of U.S. Copyright Registration No. TX0009488985, issued on January 15, 2025, entitled "Hopper Gauge Drawings – Version 10."

27. Each of the registered copyrights listed in Paragraphs 17-26, above (collectively, the "Copyrights") has original, creative work content in which Plaintiffs own a valid copyright.

28. The Copyrights are properly registered with the United States Copyright Office ("USCO") and Plaintiffs have complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

## IV. PLAINTIFF'S PATENT

29. U.S. Patent No. 8,450,998 ("the '998 Patent") is entitled "Digital Quantity Gauge for an Agricultural Aircraft Payload Hopper Using a Magnetostrictive Linear Displacement Transducer (MLDT)" and was issued on May 28, 2013. A true and correct copy of the '998 Patent is attached hereto as **Exhibit A**.

30. The '998 Patent is owned by Plaintiff Troy Reabe, who is also the properly named sole inventor on the '998 Patent.

31. The application that issued as the '998 Patent was U.S. Patent Application Serial No. 12/949,756 ("the '756 Application") and was filed on November 18, 2010.

32. The '998 Patent claims priority to U.S. Provisional Application No. 61/262,612 ("the '612 Application"), which was filed on November 19, 2009.

33. The '998 Patent has twenty claims, two are independent claims, which are claims 1 and 16. Claims 1-15 of the '998 Patent are directed to a "system for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an airplane", and claims 16-20 of the '998 Patent are directed to a "method for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an airplane."

34. Independent claim 1 of the '998 Patent recites:

> 1. A system for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an airplane comprising:
> a payload storage tank for holding the agricultural product;
> an elongated magnetostrictive linear displacement transducer tube located vertically in the aircraft payload storage tank;
> a probe float slidably coupled to move up or down on the elongated magnetostrictive linear displacement transducer tube;
> a permanent magnet coupled to the probe float wherein the position of the magnet is sensed by the elongated magnetostrictive linear displacement transducer tube which generates a signal that marks the level of the liquid in the aircraft payload storage tank; and

5

converter means coupled to convert the generated signal that marks the level of the liquid in the aircraft payload storage tank to a quantity of liquid in the aircraft payload storage tank.

35. Independent claim 16 of the '998 Patent recites:

16. A method for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an airplane comprises:
providing a payload storage tank for holding the agricultural product;
locating an elongated magnetostrictive linear displacement transducer tube vertically in the aircraft payload storage tank;
slidably coupling a probe float to move up or down on the elongated magnetostrictive linear displacement transducer tube;
coupling a permanent magnet to the probe float wherein the position of the magnet is sensed by the elongated magnetostrictive linear displacement transducer tube which generates a signal that marks the level of the liquid in the aircraft payload storage tank; and
providing converter means to convert the generated signal that marks the level of the liquid in the aircraft payload storage tank to a quantity of liquid in the aircraft payload storage tank.

36. The '998 Patent is valid and enforceable.

37. Defendants were aware of the filing of the '612 Application and the '756 Application at about the times they were filed.

38. Defendant Jeff Reabe acknowledged, prior to or about the time of the filing of the '756 Application, that he was not an inventor of the subject matter claimed in the '756 Application.

39. At no time between the November 19, 2009 filing date of the '612 Application and September 25, 2024 have Defendants ever taken any action claiming that Defendant Jeff Reabe should be added as an inventor on the '998 Patent nor that the noted inventorship of the '998 Patent is incorrect or incomplete.

## V. RELATIONSHIP BETWEEN THE PARTIES

40. Plaintiff Troy Reabe is the son of Defendant Jeff Reabe.

41. Plaintiff Troy Reabe has never been an employee of Defendants.

42. Plaintiff RD was formed by Plaintiff Troy Reabe as an engineering design and manufacturing company.

43. Plaintiff RAP was formed by Plaintiff Troy Reabe as a PMA manufacturer and distributor of parts covered by the Patent.

44. Pursuant to an oral agreement between the Parties, RD agreed to manufacture its proprietary hopper quantity gauge product, sometimes referred to as the "True Quantity Hopper Guage" or "Hopper Quantity Guage" (hereinafter the "Hopper Gauge Product"), and RAI agreed to be the customer facing sales entity for selling the Hopper Gauge Product. Accordingly, Plaintiff Troy Reabe, through Plaintiff RD, performed services as an independent contractor for Defendant RAI (the "Business Relationship") from about 2009 to about 2024.

45. During the Business Relationship, Plaintiffs never entered into any written or oral agreement with Defendants whereby Plaintiffs assigned or agreed to assign to Defendants ownership of any of Plaintiffs' work product or intellectual property rights.

46. During the Business Relationship, Plaintiffs and Defendants worked as separate business entities, with Plaintiffs designing and manufacturing products, including the Hopper Gauge Product that Plaintiffs then provided as manufactured products to Defendants as co-owned inventory, and which Defendants then sold to customers.

47. The manufactured products provided by Plaintiffs to Defendants were co-owned inventory because Defendants only paid a portion of the manufacturing costs for the manufactured products received from Plaintiffs. Then, Defendants paid to Plaintiffs a portion of the profits from Defendants' sales of the manufactured products as royalties for the use of RD technology, RD intellectual property and RD aircraft parts manufacturing services.

48. The Hopper Gauge Product, as installed on an airplane or helicopter, is a system for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an aircraft.

49. Given the nature of the Hopper Gauge Product, the installation thereof results in modifying an aircraft, which requires approval from the Federal Aviation Administration ("FAA") in the form of a supplemental type certificate ("STC"). Each STC can only be issued to one entity (an individual or company).

50. Given the nature of the Business Relationship, with Defendants selling the Hopper Gauge Product to customers, the Parties agreed that the airplane and helicopter STCs for the Hopper Gauge Product should be in the name of Defendant RAI.

51. The airplane and helicopter STCs for the Hopper Gauge Product each contain instructions for installing the Hopper Gauge Product onto an airplane or helicopter, respectively, as well as engineering drawings used for compliance, as required by the FAA.

52. It was Plaintiffs that conducted all of the conception and reduction to practice of the Hopper Gauge Product, including authorship and creation of all of the design drawings for the Hopper Gauge Product.

53. Accordingly, all of the design drawings, and most of the other content, used in the STCs for the Hopper Gauge Product were created by, and are the property of, Plaintiffs.

54. The Hopper Gauge Product is sold as a kit to customers that includes: a pressure probe, a quantity probe, a probe float with magnet, a main display, optionally a remote display, as well as various cables (collectively, the "Hopper Gauge Kit"). The customers then assemble the components of the Hopper Gauge Kit in connection with a payload storage tank for holding a

8

liquid agricultural product on an aircraft in accordance with the instructions, and thus in compliance with the STC.

55. During the Business Relationship, the Parties worked in cooperation, and Defendants enjoyed a license, albeit oral, from Plaintiffs to use Plaintiffs' intellectual property as needed in furtherance of the Business Relationship.

56. The original term of the license was ten (10) years, but the Parties extended the license to March of 2024.

57. During the Business Relationship, Plaintiffs attempted to obtain a written agreement, including the license, to memorialize the Business Relationship, but Defendants refused.

58. The use of select design drawings by Defendants, including providing copies of the design drawings to each customer that purchases the Hopper Gauge Product, which is required to be FAA compliant, was in accordance with the license that was in effect during the Business Relationship.

59. The Business Relationship between the Parties ended in 2024. The end of the Business Relationship was memorialized in a letter from Plaintiffs to Defendants dated September 25, 2024 (the "Termination Letter"), a true and accurate copy of which is attached as **Exbibit B** hereto.

60. The Termination Letter explicitly states that: "As a result of this separation, any prior authorization to use the intellectual property of Reabe Design LLC and/or Troy Reabe (collectively herein "Reabe Design") is hereby revoked and any licensing arrangements, sales arrangements and/or royalty or commission splits are hereby terminated as of the date of this letter."

61. Accordingly, any and all licenses, whether written, oral or implied, that Defendants had to any intellectual property of Plaintiffs, including any license to the Copyrights and the '998 Patent, necessary for selling the Hopper Gauge Product, were terminated as of September 25, 2024.

62. The Termination Letter also explicitly stated that "Within thirty (30) days of this letter, outstanding royalties must be paid, and co-owned inventory must be returned or sold to Reabe Design LLC." The co-owned inventory would have included any Hopper Gauge Product within the possession of Defendants.

63. The Termination Letter further explicitly instructed Defendants to return or "destroy/dispose of any documentation and/or intellectual property of Reabe Design in your [Defendants'] possession, including, but not limited to, CAD drawings, software/firmware, process specs, marketing and other copyrighted materials," and to "provide proof of such destruction or disposal" for any destroyed or disposed of documentation.

64. After the Termination Letter was sent, Reabe Design continued to perform design services with Plaintiff RAP serving as the PMA manufacturer and customer facing sales entity for the Hopper Gauge Product sold by Plaintiffs directly to customers.

## VI. DEFENDANTS' UNLAWFUL CONDUCT

65. Since September 25, 2024, Defendants have not returned any of the co-owned inventory to Plaintiffs or provided an accurate final payment for services rendered by Plaintiffs prior to termination of the Business Relationship.

66. Since September 25, 2024, Defendants have not returned any documentation and/or intellectual property of Plaintiffs, nor have Defendants provided to Plaintiffs any proof of destruction or disposal of any such documentation.

67. Since September 25, 2024, Defendants have continued to offer for sale and sell the Hopper Gauge Product to customers.

68. Defendants are the registered owner of the domain name www.reabeaircraft.com and are responsible for content displayed on the website at that domain name.

69. Since September 25, 2024, Defendants have continued to display on their website "Airplane STC SA0304OCH" for the Hopper Gauge Product (*see* https://reabeaircraft.com/wp-content/uploads/Airplane-Install-Rev-AI-1-PDF.pdf) and "Helicopter STC SR04183CH" (see https://reabeaircraft.com/wp-content/uploads/HelicopterInstall-REV-A.pdf), both of which contain copyrighted material covered by the Copyrights.

70. Upon information and belief, each sale of a Hopper Gauge Product by Defendants necessarily includes the Hopper Gauge Kit as well as an insert instructing customers to "Download Installation Instructions at www.ReabeAircraft.com, then click on Support," and the referenced Installation Instructions include telling customers how to install the Hopper Gauge Kit.

71. Upon information and belief, at least some of the Hopper Gauge Kits, or components provided within the Hopper Gauge Kits, sold by Defendants since September 25, 2024 have been from the co-owned inventory that Defendants failed to return to Plaintiffs.

72. Upon information and belief, since September 25, 2024, Defendants have engaged at least one other company to manufacture knock-off Hopper Gauge Kits and components thereof that have not been licensed or otherwise authorized by Plaintiffs (the "Knock-Off Hopper Gauge Products") (the Hopper Gauge Kits and Knock-Off Hopper Gauge Products sold by Defendants since September 25, 2024 shall be referred to collectively, as the "Accused Products").

73. Upon information and belief, all of the Accused Products sold by Defendants since September 25, 2024 have all included an insert instructing customers to "Download Installation Instructions at www.ReabeAircraft.com, then click on Support," and the referenced Installation Instructions have been obtained by customers following those directions.

74. Upon information and belief, Defendants are selling the Accused Products using the same part numbers, and are representing to the public and all customers that the Accused Products are STC compliant.

75. Upon information and belief, the Knock-Off Hopper Gauge Products are not STC compliant.

76. As a result of Defendants' infringement of Plaintiffs' intellectual property and sale of the Accused Products, Plaintiffs have received complaints from customers who are unable to operate the Knock-Off Hopper Gauge Products when they attempt to install them on an aircraft, and when they combine components thereof with components from Hopper Gauge Kits manufactured by Plaintiffs. As a result, Defendants' representations that its Knock-Off Hopper Gauge Products are STC compliant in these regards are misleading, deceptive and untrue.

77. Defendants' installation instructions for the Accused Products continue to provide the copyrighted content developed by Plaintiffs, including without limitation, the same wiring drawings for the main display unit and instructions as the Hopper Gauge Product. These instructions represent and warrant to purchasers of the Knock-Off Hopper Gauge Products that its components are the same as and interchangeable with the Hopper Gauge Product manufactured by Plaintiffs.

78. Upon examination of the Knock-Off Hopper Gauge Products, the wiring of the main display unit differs from the wiring structure as set forth in the STC. Upon information and belief, there may be other instances where the instructions to the Knock-Off Hopper Gauge Products make representations to purchasers about the components and structures being the same in the Knock-Off Hopper Gauge Products as set forth in the STC, but they actually differ. As a result,

Defendants' representations that its Knock-Off Hopper Gauge Products are STC Compliant in these regards are misleading, deceptive and untrue.

79. Defendants represent and warrant to purchasers of the Knock-Off Hopper Gauge Products that these products have been subjected to a ground test and have successfully completed the test. Because these components are regulated by the FAA, purchasers rely upon representations from a PMA manufacturer that its components have been successfully tested.

80. Plaintiffs have subjected at least one Knock-Off Hopper Gauge Product to its defined ground test procedure, and the product did not pass the test. As a result, Defendants' representations that its Knock-Off Hopper Gauge Products pass the ground test are misleading, deceptive and untrue.

81. Defendants label the Knock-Off Hopper Gauge Products with the same part numbers as are approved in the STC, and thus represent and warrant that the parts provided are STC compliant. In doing so, Defendants represent that the components having a given part number are interchangeable with each other. Plaintiffs have attempted to use the main display unit of at least one Knock-Off Hopper Gauge Product as a substitute for a main display unit of a Hopper Gauge Product manufactured by Plaintiffs, and have found that it does not work. As a result, Defendants' representations that the main display unit of its Knock-Off Hopper Gauge Product is the same part number are misleading, deceptive and untrue.

**COUNT I – INFRINGEMENT OF THE '998 PATENT**

82. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding paragraphs 1-81, above, as though set forth in full herein.

83. Defendants have infringed and continue to infringe at least claim 1 of the '998 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the Doctrine of Equivalents, by continuing to sell the Accused Products since September 25, 2024.

84. Upon information and belief, each Accused Product sold by Defendants since September 25, 2024 has included the following components:

- an elongated magnetostrictive linear displacement transducer tube located vertically in the aircraft payload storage tank;
- a probe float slidably coupled to move up or down on the elongated magnetostrictive linear displacement transducer tube;
- a permanent magnet coupled to the probe float wherein the position of the magnet is sensed by the elongated magnetostrictive linear displacement transducer tube which generates a signal that marks the level of the liquid in the aircraft payload storage tank; and
- converter means coupled to convert the generated signal that marks the level of the liquid in the aircraft payload storage tank to a quantity of liquid in the aircraft payload storage tank.

85. Each of the components listed in Paragraph 84 is especially made or especially adapted for use in a system for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an airplane in accordance with at least claim 1 of the '998 Patent.

86. None of the components listed in Paragraph 84 is a staple article or commodity of commerce suitable for substantial non-infringing use.

87. Defendants are aware that each of the components listed in Paragraph 84 are especially made or adapted for use in a system for determining the quantity of a liquid agricultural product available for spraying on a field from a tank in an aircraft in accordance with at least claim 1 of the '998 Patent, and that none of the components listed in Paragraph 84 is a staple article or commodity of commerce suitable for substantial non-infringing use.

88. Upon information and belief, each Accused Product sold by Defendants since September 25, 2024 has included a copy of the STC, which includes or directs a customer to download instructions on how the customer is supposed to install the Hopper Guage Product in

14

association with a payload storage tank for holding the agricultural product on an aircraft in accordance with at least claim 1 of the '998 Patent.

89. Defendants' continued sales of the Accused Products since September 25, 2024 constitute contributory infringement of at least claim 1 of the '998 Patent.

90. Defendants' continued sales of the Accused Products since September 25, 2024 constitute inducement of infringement of at least claim 1 of the '998 Patent.

91. Defendants' sales of the Accused Products since September 25, 2024 constitute willful infringement of at least claim 1 of the '998 Patent.

92. Defendants' infringement of at least claim 1 of the '998 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

93. As a result of Defendants' infringement of the Patent, Plaintiffs are entitled to injunctive relief to prevent or restrain Defendants from further infringement pursuant to 35 U.S.C. § 283.

## COUNT II - INFRINGEMENT OF THE COPYRIGHTS

94. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs 1-93, above, as though set forth in full herein.

95. Without permission or authorization from Plaintiffs and in willful violation of Plaintiffs' rights under 17 U.S.C. § 106, Defendants have improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiffs, thereby violating Plaintiffs' exclusive rights in their Copyrights

96. Defendants' continued display on their website of the STC at reabeaircraft.com since September 25, 2024, including the currently present file "Airplane STC SA0304OCH" for the

15

Hopper Gauge Product (see https://reabeaircraft.com/wp-content/uploads/Airplane-Install-Rev-AI-1-PDF.pdf), constitutes willful copyright infringement.

97. Defendants' provision of the STC to customers in connection with their continued sales of the Accused Products since September 25, 2024 constitutes willful copyright infringement.

98. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiffs are entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement as provided by 17 U.S.C. § 504 in an amount to be proven at trial or, in the alternative, at Plaintiffs' election, for infringement occurring after the issuance of applicable Copyright registrations, an award for statutory damages against Defendants for each infringement pursuant to 17 U.S.C. § 504(c).

99. As a result of the Defendants' violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs, and for infringement occurring after the issuance of applicable Copyrights registrations, also reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendants.

100. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiffs are entitled to injunctive relief to prevent or restrain Defendants' infringement of the Copyrights pursuant to 17 U.S.C. § 502.

### COUNT III- FALSE ADVERTISING PURSUANT TO SECTION 43(A) OF LANHAM ACT

100. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs 1-99, above, as though set forth in full herein.

101. Defendants sell the Knock-Off Hopper Gauge Products using the same part numbers as the Hopper Gauge Product, whereby Defendants are representing that the Knock-Off

16

Case 1:25-cv-01561 Filed 10/13/25 Page 16 of 20 Document 1

Hopper Gauge Products and the components thereof are identical to the Hopper Gauge Product and are STC compliant.

101. Defendants further represent and warrant in the installation instructions and paperwork issued with the Knock-Off Hopper Gauge Products that the products have been subjected to a successful ground test.

102. The use of the same part numbers, identical installation instructions and drawings and representations that the Knock-Off Hopper Gauge Products have been successfully tested are all false, deceptive and misleading statements.

103. Because the Hopper Gauge Product is regulated and approved by the FAA, it is in Defendants' best interest to make these statements to indicate to the public and any purchasing customer that the Knock-Off Hopper Gauge Products are also approved by the FAA.

104. These statements about the Knock-Off Hopper Gauge Products are material and would be relied upon by purchasing customers who need to ensure the product they are buying is FAA approved.

105. Defendants advertise and sell the Knock-Off Hopper Gauge Products to customers located throughout the United States and globally, and these advertisements are in interstate commerce.

106. Defendants' false advertising statements, which have induced customers to purchase the Knock-Off Hopper Gauge Products because they believe they are identical to the Hopper Gauge Products and are FAA approved, have injured and are likely to injure Plaintiffs in an amount to be determined at trial.

107. As a result of Defendants' false advertising statements, Plaintiffs are entitled to injunctive relief and monetary damages, including without limitation, recovery of Plaintiffs' lost

17

Case 1:25-cv-01561   Filed 10/13/25   Page 17 of 20   Document 1

profits, disgorgement of Defendants' profits, reputational damages and corrective advertising costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

 A. A judgment in favor of Plaintiffs declaring that Defendants infringe, and have infringed, the Copyrights;

 B. A judgment in favor of Plaintiffs declaring that Defendants infringe, and have infringed the '998 Patent;

 C. A judgment in favor of Plaintiffs declaring that Defendants induce, and have induced, infringement of the '998 Patent;

 D. A judgment in favor of Plaintiffs declaring that Defendants contributorily infringe, and have contributorily infringed, the '998 Patent;

 E. A grant of a preliminary and permanent injunction pursuant to 17 U.S.C. § 502(a)-(b) and 35 U.S.C. § 283, enjoining Defendants, and all their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement of the Copyrights and the '998 Patent, and from engaging in false, deceptive and misleading advertisements involving the Accused Products;

 F. A judgment awarding Plaintiffs their actual damages plus any additional profits of Defendants pursuant to 17 U.S.C. §§ 504(a)(1) and (b), or statutory damages pursuant to 17 U.S.C. §§ 504(a)(2) and (c) for infringement occurring after the issuance of applicable Copyrights registration, as a result of Defendants' infringement of the Copyrights;

 G. A judgment declaring that Defendants' infringement of each of the Copyrights was committed willfully and increasing the award of statutory damages to a sum of not more than

18

$150,000 pursuant to 17 U.S.C. § 504(c)(2) for infringement occurring after the issuance of applicable Copyrights registration;

H. A judgment awarding Plaintiffs their expenses, costs, and attorneys' fees in accordance with 17 U.S.C. § 505;

I. A judgment awarding Plaintiffs lost profits, disgorgement of Defendants' profits and/or costs associated with corrective advertising for Defendants' violation of Section 43(a) of the Lanham Act;

J. A judgment awarding Plaintiffs compensatory damages as a result of Defendants' infringement of the '998 Patent, together with interest, including pre- and post-judgment interest and costs, and taxation of all allowable costs against Defendants, and in no event less than a reasonable royalty, and an accounting, in accordance with 35 U.S.C. § 284;

K. A judgment declaring that Defendants' infringement of the '998 Patent was willful and increasing the amount of damages otherwise found or assessed by up to three times, in accordance with 35 U.S.C. § 284;

L. A declaration that Plaintiffs are entitled to injunctive relief;

M. A judgment declaring that this case is exceptional, and awarding Plaintiffs their expenses, costs, and attorneys' fees in accordance with 35 U.S.C. § 285; and

N. An award of any such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial as to the above cause of action.

Dated this 13th day of October, 2025.

/s/ Sherry D. Coley            .
Sherry D. Coley
WI State Bar No. 1038243
Jennifer Lacroix
IL State Bar No. 6272578

AMUNDSEN DAVIS LLC
318 S. Washington St., Ste. 300
Green Bay, WI 54301
Telephone: 920.431.2239
Fax: 920.435.9378
scoley@amundsendavislaw.com

150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601
Telephone: 312.455.3863
jlacroix@amundsendavislaw.com

*Attorneys for Plaintiffs, Reabe Design LLC, Reabe Aircraft Products LLC and Troy Reabe*